UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARTHA LUGO,<br><br>　　Plaintiff,<br><br>　　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>　　Defendants. | Case No. 5:16-cv-04647-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 29, 33 |

Plaintiff Martha Lugo ("Plaintiff") brings this action against several defendants including TD Bank USA, National Association ("TD Bank") and Experian Information Solutions, Inc. ("Experian"), for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681i(a), 1681s-2(b), and the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.25(a).

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331. Both TD Bank and Experian move to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 29, 33. Plaintiff opposes the motions. Having carefully considered the pleadings filed by the parties, the court finds the motions meritorious in several respects. They will be granted for the reasons explained below.

**I. BACKGROUND**

Plaintiff alleges she filed for Chapter 13 bankruptcy protection on January 23, 2012, "in order to reorganize and repair" her credit-worthiness and FICO score.[1] FAC, Dkt. No. 24, at ¶ 94.

---

[1] Plaintiff alleges that FICO is a "leading analytics software company" which calculates consumers' credit risk in the form of a three-digit number, known as a "FICO score." FAC, at ¶¶

1
Case No.: 5:16-cv-04647-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

The bankruptcy court thereafter confirmed a reorganization plan on March 21, 2012, which Plaintiff alleges allowed creditors a 0.64% disbursement of their filed claims. Id. at ¶¶ 97, 98. Plaintiff received a discharge on February 20, 2015. Id. at ¶ 100.

Over a year later, on April 15, 2016, Plaintiff alleges she ordered a "three bureau report from Experian to ensure proper reporting" by her creditors. Id. at ¶ 101. She was "dismayed" to learn that her credit scores were below 600 "despite being four years removed from filing Chapter 13." Id.

Plaintiff also noticed "5 different trade lines" on her credit report which purportedly contained inaccurate, misleading, or incomplete information "that did not comport with credit reporting industry standards." Id. at ¶ 102. Specific to TD Bank, Plaintiff alleges it reported an account as "charged off" even though the account was discharged in her bankruptcy case. Id. at ¶ 110. In addition, Plaintiff contends that "[f]or the entire duration of Plaintiff's Chapter 13 TD Bank failed to update the [Consumer Information Indicator or "CII"] to D and also failed to list the CII H upon discharge." Id.[2]

Plaintiff alleges she disputed TD Bank's inaccurate trade line by certified mail with Experian, Equifax, Inc. and TransUnion, LLC on June 23, 2016, and believes that these credit reporting agencies ("CRAs") sent her dispute to TD Bank through an "automated credit dispute verification," or "ACDV," known as "e-OSCAR." Id. at ¶¶ 103, 105. Plaintiff then ordered a second "three bureau report from Equifax" to ensure that her accounts had been updated. Id. at ¶ 106. Plaintiff alleges that TD Bank has refused to update the inaccurate trade line. Id. at ¶ 111. She also alleges Experian failed to send all relevant information to furnishers. Id. at ¶ 134.

Plaintiff initiated the instant action on August 12, 2016, and filed the FAC on October 16,

---

21-24.

[2] According to the FAC, the Consumer Data Industry Association has "adopted a standard electronic data reporting format called the Metro 2 format." Id. at ¶ 39. A CII is "a critical field within the Metro 2 format that indicates a special condition that applied to a specific consumer." Id. at ¶ 56. A CII code of "D" indicates that a Chapter 13 bankruptcy petition has been filed and is active, but no discharge has been entered. Id. at ¶59. A CII code of "H" denotes that a Chapter 13 bankruptcy has been discharged. Id. at ¶ 63.

2
Case No.: 5:16-cv-04647-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

2016. She asserts two causes of action, one under the FCRA and one under the CCRAA. The instant motions followed.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

Also, the court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

If the court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

3

Case No.: 5:16-cv-04647-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

**III.   DISCUSSION**

    **A.   Article III Standing**

TD Bank argues that Plaintiff's damages allegations fail to establish Article III standing. This threshold issue must be addressed before proceeding further. See Moore v. Maricopa Cty. Sheriff's Office, 657 F.3d 890, 895 (9th Cir. 2011) ("A federal court cannot assume subject-matter jurisdiction to reach the merits of a case.").

The constitutional standing doctrine "functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 191 (2000). It "is a doctrine rooted in the traditional understanding of a case or controversy" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo v. Robins, 136 S. Ct. 1540, 1547 (2016). Standing to sue is also a jurisdictional requirement that cannot be waived. City of Los Angeles v. Cty. of Kern, 581 F.3d 841, 845 (9th Cir. 2009).

Generally, the inquiry critical to determining the existence of standing under Article III of the Constitution is "'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Allen v. Wright, 468 U.S. 737, 750-51 (1984) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Three basic elements must be satisfied: (1) an "injury in fact," which is neither conjectural or hypothetical, (2) causation, such that a causal connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-61. If the plaintiff fails to establish these elements, "an Article III federal court therefore lacks subject matter jurisdiction over the suit [and i]n that event, the suit should be dismissed under Rule 12(b)(1)." Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).[3]

---

[3] Though TD Bank only cited Rule 12(b)(6) in its motion, the court construes this portion of its argument under Rule 12(b)(1). See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

4
Case No.: 5:16-cv-04647-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

TD Bank believes the FCRA claim fails under Spokeo because the FAC does not disclose an actual injury - or "injury in fact" - from its alleged violation of § 1681s-2(b). But as previously explained in another similar case, this court disagrees the lack of specification is fatal to the claim. See Artus v. Experian Info. Sols., Inc., No. 5:16-cv-03322-EJD, 2017 U.S. Dist. LEXIS 10718, at *5-6, 2017 WL 346022 (N.D. Cal. Jan. 24, 2017). In Spokeo, the United States Supreme Court held that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548. The Court also explained that an injury is "concrete" for Article III standing if it is de facto, such that "it must actually exist;" it must be "'real,' and not 'abstract.'" Id. In the context of a statutory violation, a plaintiff cannot simply "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. at 1549.

"[T]he purpose of the FCRA . . . is 'to protect consumers from the transmission of inaccurate information about them.'" Carvalho v. Equifax Info. Servs., LLC, 615 F.3d 1217, 1230 (9th Cir. 2010) (quoting Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009)). By providing a private cause of action for violations of § 1681s-2(b), "Congress has recognized the harm such violations cause, thereby articulating a 'chain[ ] of causation that will give rise to a case or controversy.'" Syed v. M-I, LLC, 853 F.3d 492, 499 (9th Cir. 2017) (citing Spokeo, 136 S. Ct. at 1549). "Since Plaintiff alleges that TD Bank was notified that its credit reporting was inaccurate and failed to undertake one of its duties under §1681s-2(b), she has not merely alleged a 'bare procedural violation' but rather a harm the court finds sufficiently concrete based on Congress' intent in enacting the FCRA." Artus, 2017 U.S. Dist. LEXIS 10718, at *6 (citing Keller v. Experian Info. Sols., Inc., No. 16-CV-04643-LHK, 2017 U.S. Dist. LEXIS 5735, at *10-11, 2017 WL 130285 (N.D. Cal. Jan. 13, 2017)).

Accordingly, TD Bank's argument based on lack of Article III standing is rejected.

## B. FCRA Claim

### i. Statutory Authority

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy" Safeco Inc. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). The statutory scheme imposes obligations on both furnishers of credit information, like TD Bank, and CRAs, like Experian. It also "expressly creates a private right of action for willful or negligent noncompliance with its requirements." Gorman, 584 F.3d at 1154 (citing 15 U.S.C. §§ 1681n, 1681o).

As to furnishers, the FCRA generally prohibits "[a] person" from furnishing information "relating to a consumer" to any consumer reporting agency "if the person knows or consciously avoids knowing that the information is inaccurate." 15 U.S.C. § 1681s-2(a). However, a consumer cannot sue a furnisher based simply on the communication of inaccurate information. See id.; see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). Instead, a consumer has a private right of action against a furnisher if, after receiving notice that information is disputed, the furnisher fails to reasonably undertake one of the following duties: "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," "report the results of the investigation to the consumer reporting agency," and "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." 15 U.S.C. § 1681s-2(b).

Consequently, to state a claim under the FCRA against a furnisher, a plaintiff must show that: (1) he found an inaccuracy in his credit report; (2) he notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s-2(b)(1)(A)-(E)." Corns v. Residential Credit Sols., Inc., No. 2:15-cv-1233-GMN-VCF, 2016 U.S. Dist. LEXIS 27864, at *4 (D. Nev. Mar. 3, 2016).

6
Case No.: 5:16-cv-04647-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

As to CRAs, § 1681i(a)(1)(A) provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

In connection with a "reasonable investigation," the CRA must also promptly notify the furnisher of a consumer's dispute and must provide the furnisher with all relevant information received from the consumer. 15 U.S.C. § 1681i(a)(2). Thus, Plaintiff must establish the following elements to state a plausible claim under § 1681i: "(1) [her] credit files contained inaccurate or incomplete information; (2) [she] directly notified Defendant of the inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) Defendant failed to respond to the dispute; and (5) Defendant's failure to reinvestigate caused Plaintiff to suffer actual damages." Taylor v. First Advantage Background Servs. Corp., 207 F. Supp. 3d 1095 (N.D. Cal. 2016).

### ii. Application

#### a. TD Bank

TD Bank argues the FCRA claim fails as a matter of law because it is not inaccurate to report prior delinquencies during the pendency of bankruptcy proceedings. While the court agrees with that statement in general - and has dismissed similar claims in other cases on that ground - its premise does not mandate dismissal of Plaintiff's claims, as least as asserted against TD Bank.

The analysis begins with a description of the legal landscape that has developed around the collection of interchangeable cases initiated by Plaintiff's counsel. Nearly every judge[4] in this

---

[4] The court is aware of one exception - Aulbach v. Experian Information Solutions, Inc., No. 16-cv-05716-VC, 2017 U.S. Dist. LEXIS 69004, 2017 WL 1807612 (N.D. Cal. May 4, 2017). Respectfully, this court finds the reasoning explained in Aulbach unpersuasive. To be fair, plan confirmation is not an insignificant milestone in the life of a bankruptcy. But while it may change a debtor's payment obligations and dictate creditors' abilities to collect, it does not change the fact of a debt's delinquency, and Plaintiff has not presented any authority declaring otherwise.

district, including the undersigned, has held that the FCRA does not prohibit the accurate reporting of delinquent debts during the pendency of a bankruptcy action, even after a reorganization plan is confirmed under 11 U.S.C. § 1327.[5] Indeed, as this court previously explained in Biggs v. Experian Information Solutions, Inc.:

> [W]hile § 1327(a) imparts a restraint on creditors' ability to collect outside of the plan's terms, it does not 'absolve' or erase either the debt or the fact that payments are past due. The debt may still live on in its pre-bankruptcy status if the debtor fails to perform under the plan and causes the bankruptcy to be dismissed.

209 F. Supp. 3d 1142, 1145 (N.D. Cal. 2016).

Stated another way, the court has found that "confirmation of a reorganization plan cannot be equated with a bankruptcy discharge, mainly because not every confirmation ultimately results in a discharge." Id. Thus, continuing to report debts as delinquent after plan confirmation but before discharge does not, per se, equate to an inaccuracy for an FCRA claim. Id. at 1145-46; see Carvalho, 615 F.3d at 1232 (holding that inaccuracy is a prima facie requirement of an FCRA reinvestigation claim).

---

Moreover, in this court's opinion at least, new creditors are undoubtedly interested in defaults on prior accounts when determining an applicant's creditworthiness.

[5] See, e.g., Biggs v. Experian Info. Sols., Inc., 209 F. Supp. 3d 1142, 1144-45 (N.D. Cal. 2016); Doster v. Experian Info. Sols., Inc., No. 16-CV-04629-LHK, 2017 U.S. Dist. LEXIS 8412, at *12-19, 2017 WL 264401 (N.D. Cal. Jan. 20, 2017) (Koh, J.); Messano v. Experian Info. Sols., Inc., No. 16-cv-05697-HSG, 2017 U.S. Dist. LEXIS 70111, at *7-13, 2017 WL 1833280 (N.D. Cal. May 8, 2017) (Gilliam, J.); Conrad v. Experian Info. Sols., Inc., No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641, at *12-14, 2017 WL 1739167 (N.D. Cal. May 4, 2017) (Cousins, J.); Smith v. Experian Info. Sols., Inc., No. 16-cv-04651-BLF, 2017 U.S. Dist. LEXIS 63548, at *11-17, 2017 WL 1489689 (N.D. Cal. Apr. 26, 2017 (Freeman, J.); Cristobal v. Equifax, Inc., No.16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571, at *8-9, 2017 WL 1489274 (N.D. Cal. Apr. 26, 2017) (Tigar, J.); Mensah v. Experian Info. Sols., Inc., No. 16-cv-05689-WHO, et al.; 2017 U.S. Dist. LEXIS 52553, at *14-18, 2017 WL 1246892 (N.D. Cal. Apr. 5, 2017) (Orrick, J.); Reckelhoff v. Experian Info. Sols., Inc., No: C 16-6378 SBA, 2017 U.S. Dist. LEXIS 49818, at *8-12, 2017 WL 1208398 (N.D. Cal. Mar. 31, 2017) (Armstrong, J.); Mamisay v. Experian Info. Sols., Inc., No. 16-CV-05684-YGR, 2017 U.S. Dist. LEXIS 40793, at *11-16, 2017 WL 1065170 (N.D. Cal. Mar. 21, 2017) (Gonzalez Rogers, J.); Fair v. Experian Info. Sols., Inc., No. C 16-5712 CW et seq., 2017 U.S. Dist. LEXIS 47156, at *9-10, 2017 WL 1164225 (N.D. Cal. Mar. 29, 2017) (Wilken, J.); In Re: Experian Info. Sols. Reporting Litig., No. C 16-05674 WHA, 2017 U.S. Dist. LEXIS 46601, at *7-9, 2017 WL 1319843 (N.D. Cal. Mar. 28, 2017) (Alsup, J.); Coulbertson v. Experian Info. Sols., No. 16-cv-05672-RS et seq., 2017 U.S. Dist. LEXIS 69484, at *9-11 (N.D. Cal. Mar. 25, 2017) (Seeborg, J.); Rara v. Experian Info. Sols., Inc., No. 16-cv-06376-PJH, 2017 U.S. Dist. LEXIS 39935, at *11-13, 2017 WL 1047020 (N.D. Cal. Mar. 20, 2017) (Hamilton, J.).

Importantly, the current state of authority in this district has developed around a particular set of factual allegations, asserted verbatim in hundreds of complaints brought by individuals represented by Plaintiff's counsel, all involving post-confirmation but pre-discharge credit reporting. By way of example, the plaintiff in Biggs alleged that furnishers were reporting her credit accounts to CRAs as having a past-due balance without reflecting the terms of her confirmed § 1327 reorganization plan. Id. at 1144. The plaintiff did not claim receipt of a bankruptcy discharge or submit facts demonstrating defendants' intent to collect outside the terms of her reorganization plan; instead, she alleged only that the post-confirmation reporting of her accounts as "having a balance and past due balance owed" violated the FCRA. Such allegations did not suffice for Biggs, or for the majority of other similarly-situated plaintiffs.

But the undersigned has not yet had occasion to examine whether and when allegedly inaccurate post-discharge reporting can amount to a violation of the FCRA - until now. As described above, the FAC presents a distinct factual scenario when it comes to this category of cases: Plaintiff alleges TD Bank was incorrectly reporting her account as "charged off" after a bankruptcy discharge, and did not update the Metro 2 codes to reflect the discharge. The difference is significant.

Whereas confirmation of a § 1327 reorganization plan imposes an interlocutory restraint on creditors that is capable of being dissolved if a debtor fails to perform, "[a] discharge releases debtors from personal liability on claims and enjoins creditors from taking any action against the debtor in the debtor's personal capacity." In re Blendheim, 803 F.3d 477, 486 (9th Cir. 2015) (citing 11 U.S.C. § 524(a)). In short, "a bankruptcy discharge order is a final judgment." Espinosa v. United Student Aid Funds, 553 F.3d 1193, 1199 (9th Cir. 2008). Once entered, the possibility the debtor may still be personally liable to creditors included in the bankruptcy, which persists even after confirmation of the § 1327 plan, vanishes.

Consequently, TD Bank's argument that Plaintiff's allegations fail to state an FCRA claim as a matter of law is misplaced. Given the functional difference between a confirmation and a discharge, Plaintiff may be able to make out a plausible claim under these factual circumstances.

However, she has not yet done so. Again, the FCRA requires Plaintiff to show her credit report contained an inaccuracy, either because the information "'is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" Gorman, 584 F.3d at 1163 (quoting Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998)). Because the FAC does not explain what is meant by "charged off" in the manner used by TD Bank on her credit report, and does not explain how that status is inconsistent with a bankruptcy discharge, she has not satisfied the first element of an FCRA claim. The court cannot presume the designation is inaccurate or misleading; Plaintiff must plausibly allege it.

Based on this discussion, the FCRA claim against TD Bank will be dismissed with leave to amend.

### b. Experian

The FAC presents a two-fold theory of liability against Experian, pled in the alternative. On the one hand, Plaintiff alleges Experian failed to comply with the "most basic" requirement of § 1681i(a)(1)(A) because it neglected to "send all relevant information via an ACDV to the furnishers." FAC, at ¶ 134. On the other, Plaintiff alleges Experian "has its own independent duty to conduct a reasonable investigation" under § 1681i(a)(1) because it is "not a passive entity bound to report whatever information a [furnisher] provides." Dkt. No. 137. Neither framing of Plaintiff's theory is plausibly pled.

First, as with a § 1681s-2(a) claim against a furnisher, a § 1681i claim against a CRA requires Plaintiff to identify an inaccuracy on her credit report. Carvalho, 615 F.3d at 1230. The court has already explained why she has not done so in the FAC. Thus, much like TD Bank, Experian is correct to challenge the inaccraucy element of the FCRA claim. But also like TD Bank, Experian raises an inapposite legal premise applicable to pre-discharge credit reporting.

Second, Plaintiff's alternative theory is contrary to observations made by the Ninth Circuit. Rejecting a similar contention, the court has stated that CRAs "simply collect and report information furnished by others." Id. at 1231. "Because CRAs are ill equipped to adjudicate

10

Case No.: 5:16-cv-04647-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." Id. Plaintiff's "independent duty" allegation directly contradicts this opinion of the Ninth Circuit, and is not cognizable for that reason.

Third, the facts as pled are so diametrically contradictory that her main theory is rendered implausible. Plaintiff apparently seeks to hold Experian liable for failing to electronically notify furnishers of all relevant information concerning her credit dispute. But earlier in the FAC, Plaintiff alleges that "each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each [furnisher] via an ACDV through e-OSCAR." FAC, at ¶ 105. Though it is sometimes permissible to plead inconsistent facts, these facts cannot be reconciled under the same theory. Thus, the court need not accept either version as true for the purposes of this motion. See Riggs v. Clark Cty. Sch. Dist., 19 F. Supp. 2d 1177, 1179 (D. Nev. Sept. 22, 1998).

For these reasons, the FCRA claim asserted against Experian will also be dismissed with leave to amend.[6]

### C. CCRAA Claim

Plaintiff asserts a corresponding CCRAA claim against TD Bank. With the dismissal of the only federal claim, the court declines to exercise supplemental jurisdiction over this state-law claim. It will be dismissed without prejudice at this time. 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir.1997) (en banc).

## IV. ORDER

Based on the foregoing, the Motions to Dismiss (Dkt. Nos. 29, 33) are GRANTED. The FCRA claim is DISMISSED WITH LEAVE TO AMEND. The CCRAA claim is DISMISSED WITHOUT PREJUDICE.

Any amended complaint must be filed on or before **June 1, 2017**. Plaintiff is advised that,

---

[6] Experian also challenges Plaintiff's damages allegations as a matter of pleading, but the court need not reach that issue here.

11
Case No.: 5:16-cv-04647-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

although leave to amend has been permitted, she may not add new claims or new parties to this action without first obtaining the defendants' consent or leave of court pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: May 19, 2017

EDWARD J. DAVILA
United States District Judge